ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| MUNICIPIO AUTÓNOMO DE COAMO, representado por su alcalde, Hon. Juan Carlos García Padilla<br><br>Recurrido<br><br>v.<br><br>DANIEL REINALDO EISENMANN AVILÉS, como dueño registral de la propiedad<br><br>Peticionario | TA2025CE00802 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Coamo<br><br>Civil Número: AI2025CV00333<br><br>Sobre: Expropiación Forzosa |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

### RESOLUCIÓN

En San Juan, Puerto Rico a 11 de diciembre de 2025.

Comparece ante este foro el Sr. Daniel R. Eisenmann Avilés (señor Eisenmann o "el peticionario") y nos solicita que revisemos la *Resolución Enmendada* emitida por el Tribunal de Primera Instancia, Sala Superior de Aibonito, notificada el 10 de noviembre de 2025. Mediante el referido dictamen, el foro primario denegó la moción para declarar nula la orden de entrega de dominio y desestimación del caso instada por el peticionario.

Por los fundamentos que expondremos a continuación, **DENEGAMOS** expedir el auto de *certiorari*.

### I.

El 10 de julio de 2025, el Municipio Autónomo de Coamo representado por su Alcalde, Hon. Juan Carlos

García (Municipio o "parte recurrida"), presentó una *Petición* sobre expropiación forzosa para la adquisición de un predio de terreno de la Finca 3220 del Barrio Pasto de Coamo propiedad del señor Eisenmann.[1] Señaló que, el fin establecido era la necesidad y utilidad pública para que pudieran garantizar el abastecimiento de agua a los residentes del Barrio Pasto. Alegó que, el peticionario desde que adquirió la propiedad donde enclava el pozo ha dificultado e impedido que la comunidad tenga acceso al agua potable producto del acueducto comunitario que enclava en el inmueble en controversia. Añadió que, la Autoridad de Acueductos y Alcantarillados (AAA) no provee el servicio de agua potable a dicha comunidad, teniendo el Municipio que incurrir en gastos extraordinarios para suplir agua potable a las familias del sector. Por ello, solicitó la intervención del foro primario ante el interés de adquirir la porción de terreno por una justa compensación estimada en $36,000.00.

El 14 de agosto de 2025, el Municipio presentó una *Moción Acompañando Documentos y Solicitando Autorización para Emplazar Mediante Edictos*.[2] En esta, informó que luego de múltiples gestiones realizadas por el emplazador para conseguir al peticionario, solicitó fuera emplazado por edicto dado que residía fuera de Puerto Rico.

No obstante, el 15 de agosto de 2025, el foro primario notificó una *Orden*, en la cual declaró *No Ha*

---

[1] *Petición*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] *Moción Acompañando Documentos y Solicitando Autorización para Emplazar Mediante Edictos*, entrada núm. 4 en SUMAC.

*Lugar* la solicitud, dado que las gestiones realizadas no convencieron al tribunal.

El 22 de agosto de 2025, el foro primario notificó una *Resolución*.[3] Mediante esta, determinó que el título de dominio sobre la propiedad en controversia había quedado investido a favor del Municipio, por consiguiente, la propiedad había quedado expropiada, quedando la cuantía y distribución de la compensación. El 27 de agosto de 2025, fue emitido el *Mandamiento* para su correspondiente notificación y cumplimiento con la *Resolución*.[4]

El 2 de octubre de 2025, el foro *a quo* emitió una *Orden*, solicitándole a la parte recurrida que informara el estatus del emplazamiento a la parte con interés.[5]

Así las cosas, el 17 de octubre de 2025, el Municipio presentó *Moción en Cumplimiento de Orden y Solicitando Autorización para Emplazar Mediante Edictos*.[6] En esta, reiteró su solicitud de emplazamiento por edicto. Alegó que, luego de las gestiones realizadas por el emplazador para cumplir con lo ordenado por el tribunal, las gestiones adicionales resultaron negativas por segunda ocasión. Señaló que, el emplazador, luego de entrevistar a un vecino cerca de la propiedad en controversia, le indicó que el peticionario era militar y se encontraba en los Estado Unidos.

El 20 de octubre de 2025, el señor Eisenmann presentó una *Moción Solicitando Autorización para Radicar Electrónicamente (SUMAC) como Parte Pro Se*.[7]

---

[3] *Resolución*, entrada núm. 11 en SUMAC.
[4] *Mandamiento*, entrada núm. 13 en SUMAC.
[5] *Orden*, entrada núm. 17 en SUMAC.
[6] *Moción en Cumplimiento de orden y Solicitando Autorización para Emplazar Mediante Edictos*, entrada núm. 18 en SUMAC.
[7] *Moción Solicitando Autorización para Radicar Electrónicamente (SUMAC) como Parte Pro Se*, entrada núm. 19 en SUMAC.

En la misma fecha, el peticionario presentó una *Moción para Declarar Nula la Orden de Entrega de Dominio y Desestimación del Caso*.[8] En esencia, alegó que en el momento del diligenciamiento de la orden de entrega y dominio de la propiedad en controversia, no había sido notificado de la demanda, por lo que, el foro *a quo* carecía de jurisdicción sobre su persona. Añadió que, era miembro del US Marine Corps y se encontraba destacado en Maryland. A su vez, planteó que el Municipio no presentó la declaración jurada requerida por el *Servicemembers Civil Relief Act* (SCRA). Por ello, ante la falta de notificación adecuada y la omisión de los requisitos del SCRA, la orden de entrega de dominio se debió declarar nula y dejar sin efecto.

El 21 de octubre de 2025, el foro primario notificó una orden al Municipio, concediéndole el término de quince (15) días para que presentara su postura y mostrara causa por la cual no debía imponerle sanciones económicas al no informar el estatus militar del peticionario.[9]

En la misma fecha, el foro de instancia notificó una *Orden*, en la que expuso que el señor Eisenmann se había sometido voluntariamente a la jurisdicción.[10]

No obstante, el 27 de octubre de 2025, el peticionario presentó una *Moción Aclaratoria*.[11] Mediante esta, arguyó que su comparecencia había sido únicamente para impugnar la jurisdicción, y no una sumisión voluntaria.

---

[8] *Moción para Declarar Nula la Orden de Entrega de Dominio y Desestimación del Caso*, entrada núm. 20 en SUMAC.
[9] *Orden a Demandante*, entrada núm. 21 en SUMAC.
[10] *Orden*, entrada núm. 22 en SUMAC.
[11] *Moción Aclaratoria*, entrada núm. 24 en SUMAC.

El 5 de noviembre de 2025, la parte recurrida presentó una *Moción en Cumplimiento de Orden en Oposicion a Moción de Declarar Nula, Entrega de Dominio y Desestimación del Caso, Mostrar Causa y en Oposicion a Moción Aclaratoria.*[12] En primer lugar, indicó que las partes habían estado involucradas en un caso sobre interdicho provisional y permanente en el caso 2024CV0017, y que durante el trámite del emplazamiento, fueron informados que el peticionario era miembro activo en las fuerzas armadas de los Estados Unidos. Por lo que, tuvieron que presentar una certificación del Departamento de Defensa de los Estados Unidos acorde con el SRAC. Mientras que en el caso de epígrafe, esbozó que una vez inició el proceso de emplazamiento personal, el cual fue defectuoso por el señor Eisenmann residir en los Estados Unidos, solicitaron el emplazamiento por edicto, sin embargo, fue denegado. Posteriormente, presentó una declaración jurada del emplazador en la que afirmó que el peticionario estaba en el servicio militar.

De otra parte, el Municipio resaltó que el señor Eisenmann cuando compareció a solicitar la desestimación del caso, indicó que tenía conocimiento de la causa de acción y que el Tribunal había emitido una Orden de Entrega de Dominio. Asimismo, señaló que el señor "Eisenmann realizó actos claros, sustanciales e inequívocos para someterse a la jurisdicción del Tribunal libre y voluntariamente, además expres[ó] su deseo de presentar defensas a su favor en el presente caso."

---

[12] *Moción en Cumplimiento de Orden en Oposicion a Moción de Declarar Nula, Entrega de Dominio y Desestimación del Caso, Mostrar Causa y en Oposicion a Moción Aclaratoria*, entrada núm. 26 en SUMAC.

El 10 de noviembre de 2025, el foro primario notificó la *Resolución* recurrida.[13] En esta, el foro primario concluyó que el señor Eisenmann no realizó un acto sustancial para haberse sometido voluntariamente a la jurisdicción del tribunal. No obstante, indicó que "al tratarse de un procedimiento *in rem* —dirigido contra la cosa—, la falta de notificación a una persona o entidad con algún derecho o interés sobre la propiedad expropiada no afecta la jurisdicción del tribunal para transferir el título a la parte [recurrida], aunque priva de eficacia a la determinación de la compensación y permite su litigación." Por consiguiente, señaló que el Municipio cumplió con todos los requisitos legales y reglamentarios, lo que permitió que el título absoluto de dominio quedara investido en la parte recurrida. "Ello, aun cuando el señor Eisenmann no había sido emplazado, ya que nuestro ordenamiento legal así lo permite por tratarse de una acción *in rem*."

Finalmente, determinó que el peticionario no cumplió con los requisitos dispuestos en el SCRA, al no alegar en su moción que el servicio militar afectaría sustancialmente su capacidad para presentar su defensa en el pleito, ni expuso que contara con una defensa meritoria o legal contra la acción. Así las cosas, declaró *No Ha Lugar* la *Moción para Declarar Nula la Orden de Entrega de Dominio y Desestimación del Caso* instada por el señor Eisenmann, y ordenó al Municipio a que cumpliera con el emplazamiento.

En la misma fecha, el foro primario notificó una *Orden Disponiendo Emplazamiento por Edicto*.[14]

---

[13] *Resolución*, entradas 29 y 32 en SUMAC.
[14] *Orden Disponiendo Emplazamiento por Edicto*, entrada núm. 30 en SUMAC.

En desacuerdo, el 18 de noviembre de 2025, el señor Eisenmann presentó una moción de reconsideración por violación al SCRA, al debido proceso de ley y falta de jurisdicción.[15] No obstante, el 20 de noviembre de 2025, mediante *Resolución Reconsideración*, el foro primario la denegó.[16]

Aun inconforme, el 21 de noviembre de 2025, el peticionario presentó el recurso de epígrafe, en el cual planteó los siguientes señalamientos de error:

> **Error 1** – El Tribunal reconoció que erró sobre la sumisión voluntaria, pero mantuvo la orden emitida sin jurisdicción.
>
> **Error 2** – Se admitió la falta de certificación militar bajo el SCRA, requisito indispensable, y aun así el tribunal validó el proceso.
>
> **Error 3** – Se validó un emplazamiento por edicto improcedente pese a que el Municipio conocía la dirección, teléfono y correo del apelante.
>
> **Error 4** –El Tribunal extendió ilegalmente el término de 120 días sin solicitud del demandante y fuera de término.
>
> **Error 5** – El Tribunal utilizó incorrectamente la teoría "*in rem*" para evadir el debido proceso.

En la misma fecha, presentó una *Moción Urgente Solicitando Suspensión de Efectos*. No obstante, el 24 de noviembre de 2025, emitimos una *Resolución* denegando el auxilio. Asimismo, se le concedió hasta el 2 de diciembre de 2025 al Municipio para que presentara su posición sobre el recurso.

Luego de una solicitud de prórroga, el 8 de diciembre de 2025, la parte recurrida presentó su oposición al recurso.

---

[15] *Moción de Reconsideración de Resolución Judicial de Fecha 10 de Noviembre de 2025, por Violación al Servicemembers Civil Relief Act (SCRA), al Debido Proceso De Ley y por Falta de Jurisdicción*, entrada núm. 35 en SUMAC.
[16] *Resolución Reconsideración*, entrada núm. 36 en SUMAC.

Contando con la comparecencia de todas las partes, procedemos a atender el recurso de epígrafe.

**II.**

**-A-**

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que faculta a un tribunal de mayor jerarquía a revisar las decisiones emitidas por un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 486-487 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). "[L]a característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos." *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 209; *IG Builders et. al. V. BBVAPR*, 185 DPR 307, 338 (2012). Sin embargo, la discreción para expedir el recurso no es irrestricta, ni autoriza al tribunal a actuar de una forma u otra en abstracción del resto del Derecho. *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016).

La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, establece los criterios que deben guiar nuestra determinación sobre si procede o no expedir un auto de *certiorari*. *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 209; *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 710-711 (2019). Los criterios esbozados son los siguientes:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ahora bien, ninguno de los criterios antes citados es determinante por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005), citando a H. Sánchez Martínez, *Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 560. Por lo general, los tribunales revisores no intervienen con el manejo de los casos de los tribunales de instancia, salvo cuando "se demuestre que este último actuó con prejuicio o parcialidad, que hubo un craso abuso de discreción, o que se equivocó en la interpretación o aplicación de alguna norma procesal o de derecho sustantivo." *Rivera y Otros v. Bco. Popular*, 152 DPR 140, 155 (2000), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). En tal sentido, al optar por no expedir el auto solicitado, no se está emitiendo una determinación sobre los méritos del asunto o cuestión planteada, por lo que esta puede ser presentada nuevamente a través del

correspondiente recurso de apelación. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008); *García v. Padró*, supra, pág. 336 (2005).

–B–

El derecho fundamental a disfrutar de la propiedad privada está reconocido expresamente en nuestra Constitución. Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1. Sin embargo, este derecho no es absoluto, está supeditado al poder inherente del Estado para establecer restricciones sobre las propiedades privadas en favor del bienestar común. Un ejemplo de este poder inherente es la facultad del Estado para adquirir la titularidad de bienes privados a través de la expropiación forzosa. *ELA v. El Ojo de Agua Development, Inc.,* 205 DPR 502, 518 (2020); *Municipio de Guaynabo v. Adquisición*, 180 DPR 206, 216 (2010). No obstante, esta facultad está limitada por la garantía constitucional de que no se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley. Sec. 9 del Art. II, Const. PR, LPRA, Tomo 1, ed. 2016.

La *Ley General de Expropiación Forzosa*, 32 LPRA sec. 2907, reconoce expresamente la facultad de los municipios de instar procesos de expropiación forzosa. Igualmente, el Artículo 1.008 (c) de la Ley Núm. 107 del 13 de agosto del 2020, 21 LPRA sec. 7013, conocida como *Código Municipal de Puerto Rico* (Ley Núm. 107-2020), establece que los municipios tendrán los poderes naturales y cedidos que le correspondan para ejercer las facultades inherentes a sus fines y funciones; entre estos, ejercer el poder de expropiación forzosa dentro de sus respectivos límites territoriales, por cuenta

propia o a través de lo dispuesto en el Artículo 2.018 del Código, las leyes generales y órdenes ejecutivas especiales y vigentes que sean aplicables.

En lo pertinente, el Artículo 2.018 de la Ley Núm. 107-2020, *supra*, regula el procedimiento de adquisición de bienes por expropiación forzosa. El referido articulo dispone lo siguiente:

(a) Las disposiciones contenidas en la Ley General de Expropiación Forzosa de 12 de marzo de 1903, según enmendada, serán de carácter supletorias en las acciones de expropiación forzosa por parte de los municipios y estos podrán instar procesos de expropiación forzosa por cuenta propia bajo lo establecido en este Código:

(a) ….

(1) *Privación de Propiedad*. […].

(2) *Ocupación de propiedad privada* - Los fines para los cuales los municipios pueden ocupar, demoler o causar perjuicios a la propiedad privada serán los siguientes:

[…]

(4) *Declaración de utilidad pública* - **El Alcalde solicitará a la Legislatura Municipal la aprobación de una ordenanza para que declare la utilidad pública de cualesquiera propiedades, intereses o derechos que deseen ser adquiridas, por éstas ser útiles, necesarias y convenientes a los fines municipales.** Disponiéndose, que el uso para el cual se destina la propiedad a adquirirse mediante la expropiación, la naturaleza o extensión del derecho a adquirirse, la cantidad de terreno a expropiarse, y la necesidad o lo adecuado del sitio en particular que se expropia, no podrá ser objeto de revisión por los tribunales […].

(5) *Adquisición de Bienes Inmuebles-* En casos en los que el municipio desee adquirir un bien inmueble, este solicitará, para su presentación ante el Tribunal, una certificación expedida por el Registro de la Propiedad dentro de los seis (6) meses anteriores a la presentación de la demanda. No obstante, en los casos en los que la certificación fue expedida dentro del periodo de seis (6) meses antes dispuestos, pero en una fecha que sobrepasa los tres (3) meses previos a la presentación de la demanda, deberá acompañarse con la certificación expedida por el Registro de la Propiedad y un estudio de título reciente. A estos fines, un estudio de

título reciente significará un estudio de título realizado dentro de los diez (10) días anteriores a la presentación de la demanda. El estudio de título antes mencionado deberá ser realizado por un notario público, o por una persona natural o jurídica que posea póliza de seguro que responda por cualquier error u omisión en el título.

(6) *Plano de Mensura*. - De igual forma, en casos de adquisición de bienes inmuebles, los municipios deberán realizar un plano de mensura donde se describa la ubicación, linderos, cabida y codificación de la propiedad a adquirirse, y deberá someterse el mismo junto a la Petición de Expropiación.

(7) *Informe de Valoración*. - Los municipios contratarán los servicios de evaluadores profesionales de bienes raíces, debidamente autorizados a ejercer dicha profesión, a los fines de establecer el valor actual de la propiedad a adquirirse. Los informes de valoración contendrán la siguiente información:
   (i) justo valor en el mercado de la propiedad,
   (ii) una descripción de la propiedad,
   (iii) identificación de las estructuras ubicadas en el inmueble,
   (iv) la fecha de preparación del informe,
   (v) descripción de las ventas comparables,
   (vi) la firma del tasador; y
   (vii) cualquier otra información pertinente y necesaria para la mejor presentación del justo valor en el mercado.

Cada informe de valoración deberá ser sometido a un Tasador Revisor, distinto de quien lo preparó, para su evaluación. El informe de valoración a presentarse ante el Tribunal deberá ser aprobado mediante certificación de aprobación del Tasador Revisor. […]

(8) *Personas con Interés*- Los municipios deberán identificar a todas las personas, ya sean naturales o jurídicas, que tengan algún interés o derecho sobre la propiedad o derecho a ser adquirido. Como parte de la identificación de las partes con interés, los municipios deberán llevar a cabo todas las diligencias razonables para obtener el nombre completo, dirección física, dirección postal y cualquier otra información que permita obtener contacto con dichas partes.

(9) *Petición de Expropiación*. — **Los municipios podrán presentar una Petición de Expropiación Forzosa ante el Tribunal de Primera Instancia en la Sala Superior de la Región Judicial a la cual pertenezca el municipio, o en su defecto, la demanda se presentará en la Sala Superior del lugar donde radica la propiedad conforme a la Regla 3.3 de las Reglas de Procedimiento Civil de Puerto Rico. Dicho procedimiento será de naturaleza "*in rem*".** Las Reglas de Procedimiento Civil de Puerto Rico serán aplicables a los casos de expropiación forzosa, con excepción de aquellas disposiciones de las reglas que sean claramente incompatibles con

las disposiciones de este Código. Todas las personas que ocupasen cualesquiera de las propiedades descritas en la Petición de Expropiación, que tuviesen o pretendiesen tener cualquier interés en la misma o en los daños y perjuicios ocasionados por la expropiación, aunque no se les mencionase en ella, podrán comparecer y alegar su derecho, cada una por lo que respecta al dominio o interés que en la propiedad tuviese o reclamase, de igual modo que si su nombre figurase en la demanda.

(10) *Investidura de Título y Posesión Material*. — **Tan pronto el municipio expropiante radique la Petición de Expropiación junto a la Declaración para la Adquisición y Entrega Material de la Propiedad**, conforme a la Regla 58.3 de las Reglas de Procedimiento Civil de Puerto Rico, para beneficio y uso de la persona o personas naturales o jurídicas que tengan derecho a la misma, **el título absoluto de dominio de dicha propiedad**, o cualquier derecho o interés menor en la misma según quede especificado en la declaración, **quedará investido en el municipio expropiante, y tal propiedad deberá considerarse como expropiada y adquirida para el uso del municipio que hubiese requerido la expropiación, y el derecho a justa compensación por la misma quedará investido en la persona o personas a quienes corresponda.** Desde ese instante el Tribunal podrá fijar el término y las condiciones bajo las cuales los poseedores de los bienes expropiados deberán entregar la posesión material de los mismos al demandante. En las expropiaciones de propiedades declaradas estorbos públicos bajo este Código, el municipio no vendrá obligado a consignar dinero alguno sobre la expropiación al radicar la demanda. Dicha obligación comenzará al momento en que él o los demandados comparezcan al tribunal según lo establecido en la Regla 58.5 de Procedimiento Civil de Puerto Rico.

**Los reclamos respecto al fin público y a la justa compensación que presente la parte demandada en su contestación, no impedirán que el municipio expropiante obtenga provisionalmente el título y la posesión material de la propiedad. Disponiéndose, que ningún recurso de apelación**, ni ninguna fianza o garantía que pudiese prestarse, **podrá tener el efecto de evitar o demorar la adquisición o investidura del título de las propiedades por y en el municipio que hubiese requerido la expropiación, y su entrega material al mismo.**

Una vez radicada la petición de adquisición, el Tribunal tendrá facultad para fijar el término dentro del cual y las condiciones bajo las cuales las personas naturales o jurídicas que están en posesión de las propiedades objeto del procedimiento deberán entregar la posesión material al expropiante. Esta entrega no constituye una adjudicación final, por lo que, de no estar conforme con lo resuelto, la parte con interés puede acudir en revisión al foro judicial que corresponda, principalmente con el asunto de si hay o no un fin público en la

expropiación objeto de la controversia. El Tribunal, además, tendrá facultad para dictar las órdenes que fueren justas y equitativas en relación con los gravámenes y otras cargas que pesen sobre las propiedades.

(11) *Justa Compensación (Valor Razonable en el Mercado)* – […]. (Énfasis nuestro).

En lo pertinente, la *Ley General de Expropiación Forzosa*, establece en la sección 5(a) que la declaración sobre adquisición y entrega material deberá contener y estar acompañada de:

(1) Una relación de la autoridad bajo la cual se pretende adquirir la propiedad y el uso público para el cual se pretenda adquirirla.

(2) Una descripción de la propiedad que sea suficiente para identificarla.

(3) Una relación del título o interés que se pretende adquirir de la propiedad para fines públicos.

(4) Un plano en caso de propiedad que pueda ser así representada.

(5) Una fijación de la suma de dinero estimada por la autoridad adquirente como justa compensación de la propiedad que se pretende adquirir. Disponiéndose que en el caso de aquellas propiedades que hayan sido declaradas estorbos públicos, y sean objeto de expropiación por parte de un municipio por motivo de utilidad pública, y las mismas deban alguna cantidad por el concepto de contribución sobre la propiedad inmueble o gravámenes por el concepto de multas, gastos de limpieza y mantenimiento y/o cualquier otro gasto necesario y conveniente a los fines de eliminar la condición de estorbo público o gastos de mitigación de una declaración formal de estorbo público, la suma de dinero como justa compensación será el valor de tasación menos las deudas por contribución y de los gravámenes, gasto de limpieza y mantenimiento y/o cualquier otro gasto necesario y conveniente a los fines de eliminar la condición de estorbo público correspondientes a la propiedad, incluyendo deudas, intereses, recargos o penalidades.

(6) En los casos en que el municipio decide expropiar estorbos públicos mediante el procedimiento sumario establecido en el Artículo 4.012A de la Ley 107-2020, según enmendada, procederá conforme al procedimiento allí establecido.
Tan pronto se radique tal declaración de adquisición y entrega y se haga el depósito en el tribunal, para beneficio y uso de la persona o personas naturales o jurídicas que tengan derecho al mismo, de la cantidad estimada como compensación y especificada en la declaración, el título absoluto de dominio de dicha

propiedad, o cualquier derecho o interés menor en la misma según quede especificado en la declaración, quedará investido en el Estado Libre Asociado de Puerto Rico o Gobierno Estatal, o en la agencia o instrumentalidad del Estado Libre Asociado de Puerto Rico que hubiere requerido la expropiación, o en el de la entidad demandante o peticionaria que no fuere el Estado Libre Asociado de Puerto Rico, y tal propiedad deberá considerarse como expropiada y adquirida para el uso del Estado Libre Asociado de Puerto Rico o Gobierno Estatal, o de la agencia o instrumentalidad gubernativa del Estado Libre Asociado de Puerto Rico que hubiere requerido la expropiación, o de la correspondiente Autoridad de Hogares, o del municipio en cuestión, según fuere el caso […].

Asimismo, la Regla 58.3(b) de Procedimiento Civil, 32 LPRA Ap. V, establece dos etapas en el proceso judicial de expropiación forzosa. La primera etapa es la de presentación de la petición, en la cual el Estado tiene que acumular como demandados a aquellas personas que tengan algún interés en la propiedad. En la segunda etapa, la Regla le impone una carga mayor al Estado, pues está obligado a acumular en el pleito, previo a que se celebre cualquier vista para determinar la compensación, aquellas personas con interés sobre la propiedad cuyos nombres se adviertan luego de llevar a cabo las diligencias razonables en el Registro de la Propiedad.

En cada una de las dos fases del procedimiento judicial de expropiación forzosa se protegen o salvaguardan intereses distintos. Presentada la declaración de adquisición y consignado el importe del justo valor, el Estado es investido del título sobre la propiedad. Es entonces en este momento, y no con la resolución del tribunal en que se ordena que el título le corresponde al Estado, que adviene como titular del bien expropiado. El interés del Estado en un procedimiento de expropiación es exclusivamente advenir

titular del inmueble para proceder a ejecutar la obra pública programada. *ACT v. Iñesta*, 165 DPR 891 (2005).

-C-

El *Servicemembers Civil Relief Act* (SCRA), 50 USCA sec. 3901 *et seq.*, es un estatuto federal aplicable a nuestra jurisdicción, que tiene como fin proteger a los miembros de las fuerzas armadas de los Estados Unidos del rigor de los trámites de las acciones civiles de las cuales pueda ser parte. A su vez, provee una suspensión temporera sobre los procedimientos judiciales o administrativos que pueden afectar adversamente los derechos civiles de los miembros del cuerpo militar mientras se encuentran en servicio activo. 50 USCA sec. 3902. Asimismo permite la paralización de los procedimientos en contra del miembro de las fuerzas armadas a su solicitud, cuando este se encuentre activo. 50 USCA sec. 3932.

En lo pertinente, el precitado estatuto dispone lo siguiente en cuanto a la paralización:

> (a) **Applicability of section**
>
> This section applies to any civil action or proceeding, including any child custody proceeding, in which the plaintiff or defendant at the time of filing an application under this section--
>
> (1) is in military service or is within 90 days after termination of or release from military service: and
>
> (2) has received notice of the action or proceeding.
>
> (b) **Stay of proceedings**
>
> (1) **Authority for stay**
> At any stage before final judgment in a civil action or proceeding in which a servicemember described in subsection (a) is a party, the court may on its own motion and shall, upon application by the servicemember, stay the action for a period of not less than 90 days if the conditions in paragraph (2) are met.

**(2)    Conditions for stay**
An application for a stay under paragraph (1) shall include the following:

(A) A letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear.

(B) A letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter.

**(c) Application not a waiver of defenses**

An application for a stay under this section does not constitute an appearance for jurisdictional purposes and does not constitute a waiver of any substantive or procedural defense (including a defense relating to lack of personal jurisdiction). 50 USCA sec. 3932.

Es decir, para que proceda la paralización de los procedimientos es necesario que quien promueve la acción solicite la misma mientras se encuentra en servicio militar o durante los noventa (90) días posteriores a la fecha en la cual terminó su servicio militar y cuando ha recibido una notificación sobre la acción o procedimiento. Asimismo, el solicitante deberá acreditar mediante carta u otro tipo de comunicación su imposibilidad de comparecer a los procedimientos que se estén llevando a cabo donde este sea parte y tendrá que notificar la fecha a partir de la cual estará disponible para comparecer. De igual forma, la eficacia de la solicitud de paralización quedará supeditada también a la presentación de una carta o comunicación suscrita por el *Commanding Officer* del solicitante para certificar que las tareas militares que le han sido delegadas le

impiden comparecer a los procedimientos y que, al momento de la comunicación, no es acreedor de una licencia especial o permiso para interrumpir su servicio militar. Por lo tanto, si la petición cumple con los requisitos mencionados, el foro primario no tendrá discreción para denegar la paralización. Finalmente, la paralización no podrá ser otorgada por un término menor a 90 días.

### III.

En el caso de autos, el señor Eisenmann nos solicita que revisemos la *Resolución* emitida por el foro primario el 10 de noviembre de 2025, en la cual denegó su moción para declarar nula la orden de entrega de dominio y desestimación del caso. En esencia, alega que incidió el foro primario al mantener la orden de entrega de dominio sobre la propiedad en controversia, aun cuando no se le emplazó conforme a derecho, por lo que, el tribunal no adquirió jurisdicción sobre su persona. A su vez, arguye que erró el foro primario al continuar con el pleito sin la certificación militar exigida por el SCRA.

Por su parte, el Municipio sostiene que cumplió con su obligación de presentar la declaración de adquisición requerida por ley. Por ello, el foro primario ostentaba jurisdicción sobre el asunto y procedía a su favor la investidura del título de propiedad. Asimismo, reitera que el procedimiento de expropiación era de naturaleza *in rem*, y no estaba dirigido contra la persona, por lo tanto, procedía la resolución de investidura sin la declaración jurada.

Luego de examinar el expediente y los argumentos presentados por las partes, a la luz del derecho

aplicable y ante la discreción que nos reconoce la Regla 52.1 de Procedimiento Civil, *supra*, y de los criterios establecidos en la Regla 40 del Tribunal de Apelaciones, *supra*, no identificamos razón por la cual debamos intervenir, dado que no se presentan ninguna de las situaciones que allí se contemplan.

Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios en los que el foro primario haya sido arbitrario, cometido un craso abuso de discreción o cuando de la actuación del foro *a quo* surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Por lo tanto, procedemos a denegar el recurso sin trámite ulterior para que continúen los procedimientos correspondientes.

**IV.**

Por los fundamentos antes expuestos, **DENEGAMOS** expedir el auto de *certiorari*.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones